IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ENRIQUE PARDO,

    Plaintiff,

v.

WEXFORD HEALTH (CORRECTIONAL),
WARDEN EDWIN BOWEN, ASSISTANT
WARDEN MURDOCK, D. WELTZ,
Medical Director, Dr. MONDAL,
RAJENDRA SHROFF, MARY CURRIE,
nurse, D. THANE CODY, JAY RISEMAN,
and SOUTHERN ILLINOIS UNIVERSITY,
d/b/a MEMORIAL MEDICAL CENTER,

    Defendants.

No. 01-444-MJR

**PLAINTIFF DEMANDS
TRIAL BY JURY**

## COMPLAINT

Plaintiff, Enrique Pardo, through his attorney, Alan Mills of the Uptown People's Law Center, as his complaint against the defendants states as follows:

### ALLEGATIONS COMMON TO ALL COUNTS

#### Jurisdiction and Venue

1.    The jurisdiction of the Court over Counts One and Two is invoked pursuant to 28 USC §1331 and 1343(a)(3) and (4), as they arise under the Eighth and Fourteen Amendments to the Constitution of the United States and 42 USC § 1983.

2.    Jurisdiction of the Court over Counts Three and Four is invoked pursuant to 28 USC §1367(a).

3. Venue is appropriate in the Southern District of Illinois pursuant to 28 USC § 1391(b), as some of the events complained of occurred in Clinton County, located in this district.

## The Parties

4. Plaintiff Enrique Pardo is an inmate currently confined at Pontiac Correctional Center ("Pontiac"), located in Pontiac, Illinois. At the times relevant to this complaint, Mr. Pardo was confined at Centralia Correctional Center, located in Clinton County, Illinois, a prison operated by the Illinois Department of Corrections ("Centralia").

5. Defendant Wexford Health (Correctional) is a corporation whose principal place of business is located Pittsburgh, Pennsylvania. At all times relevant hereto, Wexford had a contract to provide all health care services, including services provided outside of the institution, to prisoners confined to Centralia.

6. Defendant Edwin Bowen was, at all times relevant hereto, employed by the Illinois Department of Corrections ("IDOC") and assigned as the Warden of Centralia. Warden Bowen is sued in his individual capacity. In his capacity as Warden, he was responsible for establishing policies and procedures governing the operation of Centralia Correctional Center.

7. Defendant Murdock was, at all times relevant hereto, employed by the IDOC and assigned as the Assistant Warden of Programs at Centralia. She is sued in her individual capacity. As Assistant Warden of Programs, she was responsible for all programs at Centralia, including recreational equipment used by prisoners.

8.  Defendant D. Weltz, at all times relevant hereto, upon information and belief, was employed by Wexford as the Medical Director of Centralia. He is sued in his individual capacity. As Medical Director, he was responsible for approving all medical care for prisoners at Centralia.

9.  Defendant Dr. Mondal, at all times relevant hereto, upon information and belief, was employed by Wexford as a doctor and assigned to Centralia. He is sued in his individual capacity.

10. Defendant Rajendra Shroff, at all times relevant hereto, upon information and belief, was employed by Wexford as a doctor and assigned to Centralia. He is sued in his individual capacity.

11. Defendant Mary Currie, at all times relevant hereto, upon information and belief, was employed by Wexford as a nurse and assigned to Centralia. She is sued in her individual capacity.

12. Defendant D. Thane Cody, at all times relevant hereto, was a physician practicing at the Southern Illinois University School of Medicine.

13. Defendant Jay Riseman, at all times relevant hereto, was the attending trauma surgeon at the Trauma Surgery Service at Memorial Medical Center, operated by the Southern Illinois University School of Medicine.

14. Defendant Southern Illinois University, through its School of Medicine operates Memorial Medical Center ("Memorial"), which at all times relevant hereto, was located in Springfield, Illinois.

## Injury To Plaintiff

15. On July 11, 1999, plaintiff was lifting weights on the yard at Centralia during his assigned yard period.

16. When he returned the weights to the bracket designed to hold them, they fell, crushing his face.

17. After being kept waiting 10 minutes on the yard, Mr. Pardo was taken to the Centralia Health Care Unit.

18. After waiting at the Health Care Unit for approximately 20 minutes, Mr. Pardo was transported by ambulance to St. Mary's Hospital in Centralia, Illinois.

19. After examining him, performing a CT Scan and other tests, St. Mary's Hospital determined that Mr. Pardo's injury was too severe to be treated at St. Mary's. At approximately 3:00pm, Mr. Pardo was transported to Memorial in Springfield, Illinois, by helicopter.

20. On July 16, 1999, Mr. Pardo underwent a 7½ hour operation in which a piece of his hip bone was removed and grated onto the bones in his face as part of a complete reconstruction.

21. Mr. Pardo remained at Memorial until July 21, 1999. During his stay at Memorial, Mr. Pardo was kept on intravenous antibiotics.

22. During his hospitalization at Memorial, Dr. Cody was plaintiff's attending physician.

23. During his hospitalization at Memorial, Dr. Riseman was responsible for management of plaintiff's care, as the attending trauma surgeon.

24. On July 21, 1999, on the direction of Wexford, Mr. Pardo was returned to Centralia's Health Care Unit.

25. Upon his return to Centralia, Mr. Pardo was not given any antibiotics.

26. On July 23, 1999, Mr. Pardo was examined by Dr. Mondal. Mr. Pardo complained to Dr. Mondal that his forehead was swollen and that he had dried blood clots in both nostrils. Dr. Mondal said that these were normal after effects of the type of surgery Mr. Pardo had undergone.

27. On July 26, 1999, Mr. Pardo was again examined by Dr. Mondal. He complained that the swelling of his forehead and face was increasing, rather than decreasing. He also complained that he was running a fever. Dr. Mondal again said that these were normal after effects of surgery.

28. On the evening of July 26, 1999, Mr. Pardo's temperature had increased even higher and the swelling continued to get worse. Mr. Pardo brought these conditions to the attention of defendant Mary Currie. Ms. Currie contacted Dr. Shroff by telephone and Dr. Shroff prescribed, for the first time since his release from Memorial, antibiotics.

29. On July 29, 1999, Mr. Pardo was examined by Dr. Shroff and again complained that the swelling of his head and face was still getting worse rather than improving. Dr. Shroff advised him that the swelling was normal.

30. On August 2, 1999, Mr. Pardo's swelling had become so bad that he was readmitted to Memorial where, the following morning, they performed a second surgery to drain infected tissues. He remained in Memorial, again on intravenous antibiotics, until he was returned to Centralia on August 10, 1999.

31. On August 26, 1999 Mr. Pardo again returned to Memorial to remove the drainage tubes and reconstruct his nose. Mr. Pardo remained at Memorial until September 3, 1999, when he was returned to Centralia.

### Damages Suffered By Plaintiff

32. Plaintiff suffered severe pain and agony for many months after July 11, 1999.

33. Plaintiff also suffered severe pain in his hip as a result of having bone removed as part of the reconstructive surgery. This pain is continuing through the present.

### COUNT ONE

### Defendants Ignored A Clear Risk Of Injury To Plaintiff And Other Prisoners In Violation Of The Eighth Amendment Prohibition Against Cruel and Unusual Punishments
(vs. defendants Bowen and Murdock)

34. Plaintiff realleges the facts set forth in paragraphs 1 through 31 as if they were set forth in full in this Count One.

35. The weight bench used by plaintiff on July 11, 1999, was unnecessarily dangerous in that the brackets designed to hold the weights were in the shape of a "L", rather than in the shape of a "U". This shape allowed the weights to roll off the bracket.

36. A "U" shape would have prevented the injury suffered by plaintiff.

37. Prior to July 11, 1999, one or more inmates had brought the dangerous shape of the bracket to the attention of the staff at Centralia.

38. Upon information and belief, defendant Bowen had either received those complaints directly or they had been reported to him.

39. Upon information and belief, defendant Murdock had either received those complaints directly or they had been reported to her.

40. Despite their actual knowledge of the unnecessary danger posed to prisoners using the weight bench, neither Bowen nor Murdock took any action to reduce the danger, including either repairing the brackets or removing the unsafe bench from the yard.

41. By ignoring an unreasonably dangerous condition which posed an excessive risk to the safety and health of prisoners, defendants violated the prohibition against cruel and unusual punishments guaranteed by the Eighth Amendment to the United States Constitution.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and against defendants for compensatory and punitive damages, in an amount to be determined by the jury upon trial of this case, and award plaintiff attorney's fees and costs.

## COUNT TWO

### Defendants' Failure To Follow Physician's Orders That Plaintiff Be Given Antibiotics Constituted Deliberate Indifference To Serious Medical Needs In Violation Of The Eighth Amendment
(vs. Shroff, Mondal and Currie)

42. Plaintiff realleges the facts set forth in paragraphs 1 through 31 as if they were set forth in full in this Count Two.

43. Upon plaintiff's discharge from Memorial on July 21, 1999, the physicians at Memorial directed that the Centralia Infirmary was to continue plaintiff's intravenous antibiotic therapy.

44. Defendants consciously chose to disregard these directions.

45. As a result of defendants' failure to follow plaintiff's discharge instructions, he developed a massive infection requiring additional surgery and subjecting plaintiff to extreme discomfort for many months more than he would have otherwise suffered.

46. Defendants' conscious disregard of the medical instructions of Memorial in the face of a substantial risk that plaintiff would develop an infection constitutes deliberate indifference to plaintiff's serious medical needs in violation of the cruel and unusual punishment prohibition of the Eighth Amendment to the United States Constitution.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and against defendants for compensatory and punitive damages, in an amount to be determined by the jury upon trial of this case, and award plaintiff attorney's fees and costs.

## COUNT THREE

### Defendants' Failure To Provide Plaintiff With Antibiotics Constituted Medical Malpractice
(vs. Wexford, Weltz, Mondal, Shroff and Currie)

47. Plaintiff realleges the facts set forth in paragraphs 1 through 31 as if they were set forth in full in this Count Three.

48. Upon plaintiff's discharge from Memorial on July 21, 1999, the physicians at Memorial directed that the Centralia Infirmary was to continue plaintiff's intravenous antibiotic therapy.

49. Defendants consciously chose to disregard these directions.

50. As a result of defendants' failure to follow plaintiff's discharge instructions, he developed a massive infection requiring additional surgery and subjecting plaintiff to extreme discomfort for many months more than he would have otherwise suffered.

51. As the Medical Director of Centralia, defendant Weltz was responsible for ensuring that the medical care provided to prisoners was comparable to the medical care provided to the general public.

52. By entering into a contract with the State of Illinois to provide medical services for prisoners at Centralia, Wexford was responsible for delivering medical care to prisoners which was comparable to the medical care provided to the general public.

53. By insisting that Mr. Pardo be returned to Centralia from Memorial on July 21, 1999, without ensuring that antibiotics treatment would be provided, Wexford failed to comply with the minimum standards of medical treatment.

54. Defendants' conscious disregard of the medical instructions of Memorial in the face of a substantial risk that plaintiff would develop an infection failed to comply with the minimal standards of medical treatment.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and against defendants for compensatory and punitive damages, in an amount to be determined by the jury upon trial of this case.

### COUNT FOUR
### Defendants' Failure To Instruct The Medical Staff At Centralia To Continue Antibiotic Treatment Constitutes Medical Malpractice
(in the alternative, vs. Cody, Riseman, and Southern Illinois University)

55. As an alternative to Counts Two and Three, plaintiff realleges the facts set forth in paragraphs 1 through 31 as if they were set forth in full in this Count Four.

56. Upon discharging plaintiff from Memorial on July 21, 1999, defendants' failed to make any entry in plaintiff's chart, prepare a discharge summary, or otherwise advise the medical staff at Centralia that plaintiff should be continued on intravenous antibiotic treatment.

57. As a result of defendants' failure to provide proper instructions upon plaintiff's discharge, he developed a massive infection requiring additional surgery and subjecting plaintiff to extreme discomfort for many months more than he would have otherwise suffered.

58.     Defendants' failure to provide medical instructions in the face of a substantial risk that plaintiff would develop an infection failed to comply with the minimum standards of medical treatment.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and against defendants for compensatory and punitive damages, in an amount to be determined by the jury upon trial of this case.

                                        Respectfully submitted,


                                        _____
                                        Attorney for plaintiff


Alan Mills
**Uptown People's Law Center**
4404 North Broadway
Chicago, Illinois  60640
(773) 769-1411